calls the case of Baca v. Department of Army, 1995-3-6, and you will note that Judge Seymour is not physically present for the arguments today. She is vouching in. She will participate fully in the decision, will listen to the recording of oral argument, and will participate just as fully as if she were here today. With that, we'll hear from the appellant. Good afternoon. May it please the court, I'm Andrew Indahl. I represent the petitioner Larry Baca. Mr. Baca was literally fired for investigating an incident of workplace violence. And there's no question that that's why he was fired, because that's charge two on his termination paperwork. Could you raise that up? Yes, Your Honor. I apologize. It's my fault. He said, he was literally fired for investigating an incident of workplace violence, and we know that, because that's charge two on his termination paperwork. That he was trying to get information from an eyewitness. Well, what it is, is that the charge was that he spent, I think, three hours trying to get Mr. Huell to give the testimony that he wanted him to give. And they were concerned that that was coercive behavior. Yes, Your Honor, that was the charge. The evidence at the hearing from Mr. Hull was very contradictory to that. It was Mr. Baca wanted me to write a statement. I guess, in fact, I didn't really want to write a statement for what I thought I heard. And I didn't want to do that at that time. How is that contrary to the fact that he was in there for three hours, trying to browbeat him into giving him favorable testimony? There was no testimony from Mr. Hull to that, Your Honor. Mr. Hull did not say that. Someone else claimed that from across the entire wall. But Mr. Hull's testimony was very simple. Mr. Hull's testimony was he asked me to make a statement. I made a statement, and that was it. The government, if they wanted to prove that there was this browbeating effort, they could have done that, because they had Mr. Hull in the courtroom. But they didn't do that. There's really no way to prove, one way or the other, how long it happened. But Mr. Hull's testimony does not support the conclusion that there was three hours of browbeating. If the court were to find that there was substantial evidence to support a finding that Mr. Baca had intimidated Mr. Hulls, could that still be protected conduct? Or would that preclude a finding of protected conduct? In other words, is it protected in order to intimidate a third party to give testimony? The law that I've seen is not particularly clear on whether you can engage in protected activity. I haven't seen that. I've seen there's something in which it becomes coercive. Well, I'm assuming that it is coercive, or at least intimidating. So are you affirmatively arguing that it still would be protected if it were intimidation? Or are you not going that far? My assertion would be that it would still be protected to be intimidating, provided that you're not intimidating in an effort to make the person write a false statement. You order a person to state, here's what I saw happen. But you cannot order them to say something false. And there's no evidence that Mr. Baca attempted to make any of those statements. Well, you would agree you have to lawfully assist the other individual? Yes. OK. So if we were to conclude that lawfully means not intimidate them, then we would have to rule against you, wouldn't we? I would not agree with that, because there's no evidence supporting any intimidation. Mr. Hull's testimony does not support the finding of intimidation. Mr. Hull's testimony also doesn't support Mr. Baca's testimony of what happened? That's correct. But what we have is a lot of corroboration, that it actually occurred, that he actually suffered the battery that contradicts Mr. Hull's testimony. That's my main point. The key point is that when there is corroboration for a reasonable motive, it has to be considered. Well, doesn't it have to be information that was available to Mr. Baca at the time? Corroboration is a reasonable motive. So the information known to him at the time was, it was physically present, he saw it happen, and the victim of the battery reported it and went home. That, in our argument, is enough to give you a reasonable belief that the battery occurred. However, there's a lot of corroboration that takes it beyond that. Well, the finding of the administrative judge was that Mr. Baca didn't actually, or reasonably, believe that a battery occurred. If we find there's substantial evidence in the record to support that, aren't we done? I don't believe so. Why not? Because he's by no means a stand-in for what a reasonable belief is. A reasonable belief is facts known to be affirmed that would cause a reasonable person to believe that the misconduct had occurred, and the judge did not engage in that analysis at all. He did not do that. He asked whether he believed the allegation was plausible, which, under the... Well, he did more than that. He said, they're not plausible and you didn't believe it. Right. And in order to do that, he completely disregarded all the corroboration that actually happened. So what he's done is, if I can offer an analogy, if I'm in a 7-Eleven and I'm present for a robbery and I physically see it, and there's surveillance equipment that shows the robbery and shows me there, then, for some reason, I need to prove that I have a reasonable belief that the robbery occurred. What this judge did was, he excluded the video evidence that the robbery actually occurred, that I was actually there, and then he said, I don't believe, and that's deeply, deeply wrong. If we have evidence that it actually occurred, you cannot then ignore that evidence and then discredit the testimony of the person. What's the evidence that it actually occurred? The medical records from the VA. Well, the medical records don't really... What in the medical records do you point to? Well, he never... He said he had a sore back, but he never said that I was battered. And he also didn't produce a picture, despite being requested specifically by the AJ to come up with that picture. But after he spoke, what's your guess? That he was still in chiropractor's care? He did not do that analysis. He did not ask what facts were known to Mr. Buck and under Drake, that's what's improper. He did not say, what did Mr. Buck know? What did Mr. Buck see? He takes the position of a guy standing aside and asking himself, what do you like about what you needed to do and what happened in the Drake case was. You have to identify what facts were known to him and would the reasonable person believe that a misconduct had occurred under those circumstances. Well, here's the facts that he did not analyze, that he needed to analyze, are that he was physically present, that he heard two sounds and that he was told by the victim, I'm going home because I was injured. I don't see how that's not reasonable. How is it possible to not reasonably believe it when the victim is telling him that he just got hurt? But he's he's saying that he physically saw it which is a little different than whether or not he found out afterward. Well, both of those facts go together. Okay. He had a reasonable belief that the misconduct occurred because A, he saw it and B, the victim told him, I'm not hurt but I'm going home. So on the basis of those two facts, the judge needed to do an analysis and say, would a reasonable person, would a reasonable person believe that misconduct occurred under those circumstances and he did not do that? And his failure to do that by himself is reversible. Okay. In determining what, the evidence that you're relying on is large part Mr. Baca's own testimony, right? No. Well, a large part of it is. No, no. None of it is Mr. Baca's own testimony. 5%. Could the AJ reject that 5% because he didn't believe that Mr. Baca was credible? He's able to do that because he disregarded all of the progress. He, if he makes a determination that Mr. Baca is not credible, for example, Mr. Baca testified, I immediately interrupted the meeting and I said that you just battered him. Nobody in the meeting corroborates that and they say it's patently untrue. The AJ listens to that and says, Mr. Baca's not credible. Isn't the AJ allowed to do that? Mr. Alvarez Mr. Alvarez was completely disregarded. I don't know why. But Mr. Alvarez was present and Mr. Alvarez, there's two speeches of his testimony that the judge intended to not read. Well, isn't he the one that left? Yes. So he wasn't there to know whether Mr. Baca immediately after this slamming of the door happened said, how dare you batter him. This is outrageous. When the only, there were only three people left in the room at that time and two of them said Baca's testimony isn't what happened. Well, that's not what I'm asking. But what I'm asking is about credibility. We don't make credibility determinations. Trial judges and ALJs don't make them as to one point. There was a finding the ALJ determined that Mr. Baca was wholly incredible. Your Honor, that's not the analysis. The analysis is what facts were known to him. Those facts that reasonable persons believe that this kind of occurred. Not whether the judge believes or not. Whether there are facts that a reasonable person can conclude that these facts straight show that it's reversible error if they don't do that analysis and the judge can't do that analysis. You have to ask what the facts are and identify whether a reasonable person can believe that this kind of occurred. There's no way that a reasonable person would not believe having seen it, having heard from the victim I got heard from going home and then there's enormous amount of corroboration that shows that it actually occurred. So what the judge has done is he's stricken the weapon from Mr. Baca's hand and he's told Mr. Baca's defense he's eliminated all of the evidence that shows that he's telling the truth and then decided he doesn't believe Mr. Baca. It's deeply, deeply disturbing. You cannot if a person needs to prove that they have a reasonable belief that something occurred in a 7-11 exclude the video showing that it happened showing that they're there and then disregard their testimony. The video shows the reasonable belief and here the corroboration shows that the injury actually occurred that he's telling the truth so what he's done is he's like I said he's stripped the weapons from Mr. Baca's hand and then told Mr. Baca and that's under the lead case that's inappropriate. The corroboration needs to be and needs to be considered and if you read the initial decision Mr. Albrecht just didn't offer any testimony about whether he was injured that testimony is absent from the record that is the corroboration that the misconduct occurred from the victim if we can disregard victim testimony that they were injured what is the point on the Police and Law Protection Act in first place? The regulation here is DODI 14.3806      acts of violence and harassment and harassment and harassment and harassment and harassment and harassment and harassment and harassment and harassment and harassment and harassment and harassment and harassment Was that the DODI instruction was that presented to the administrative judge? Okay, but what do we do with the fact that the administrative judge wasn't alerted to that instruction? Even if you preserved your underlying theory to conclude that the adjudicator failed to apply a DODI instruction that nobody had told the administrative judge about. Isn't that a problem? That you can't do this in the workplace and the judge does reflect that violence in the workplace would obviously be misconduct and if you were reporting it would obviously be wrong.  that that regulation was not specifically cited was not an issue. The real problem is he just ignored that whole theory of relief and hiring   to do it. I would like to reserve those comments. Thank you. We'll hear from the appellate or the respondent. You accept IATA before your 15 minutes close? We've got a height difference. I would like to address the contentions being made with regard to 2302 8A that's the allegations regarding whether Mr. Baca had a reasonable opinion. In reference to what Mr. Baca was saying in his briefs today, he's saying that the administrative judge had to accept Baca's view of reality in determining whether or not Baca had a reasonable opinion. There's no support for that contention in the case law court. But also arguing that there was other evidence, not just Mr. Baca's testimony, that was ignored. Yes, yes he is. There's two issues. The first issue is what happened in the room, what happened in the office. And there the testimony of Mr. Baca was not that he saw it. The court looks at the testimony and that's  Baca said. He said he heard it. He said he heard two sounds, the first sound being what he took to be the door, he named Mr. Alvear when he was inside the office, and then the second sound being the slamming of the door. The judge found to the contrary that that did not lie on in rejecting Mr. Baca's recollection of the two sounds. He found it in fact by the judge. I'm going to answer your question. He finds it on page 725 of the record on appeal. And he finds there that according to Mr. Alvear, he was already on the other side of the door, in the courtroom, walking away, admittedly walking away at the time. That was Mr. Alvear's statement. It was in his written statement. The citation there in the war's decision is to tab 20, and tab 20, that's the affirmative defenses that are amended, and with those amended affirmative defenses attached to it is the written statement of Mr. Alvear's. So the board did consider, the board judge did consider Mr. Alvear's testimony and written statement, and that is consistent with all the other testimony, that being the testimony of Mr. Halls, the testimony of Ms. Pritchett, that Mr. Alvear's is not hit by the war in the office. I didn't have that. He's already exited the office when the door closes such that it's closed. Let's talk a minute about the medical evidence. You've got Mr. Alvear's chiropractor reporting ongoing treatment for lumbar disc and joint degeneration. Is there anything in the medical records that says, and this was caused by being hit with the door? What happened was that Mr. Alvear's, after exiting the office, then goes to the Department of Emergency Services and makes a report that Ms. Richard assaulted him badly. And then he goes to the clinic, which is right there at the facility. And he claims that he was assaulted by Ms. Richard. There's no medical record from that visit to the clinic. You only have Mr. Alvear's testimony, and you have the report of the investigation where it's reported that Ms.   Alvear. And the investigation of Mr. Alvear claims that pictures were taken, and the doctor claims that no such pictures were taken, and basically, what Mr. Alvear is saying is not qualitative. So, as I said, there were two issues. What went on in the room, and what went on after Mr. Alvear's exodus, the office, and he's in the hallway. Now, the judge also found that right from there, after the door slammed shut, Mr. Baca claims this is his testimony. He claims that he immediately accuses Ms. Richard of an assault and battery, and that Mr. Baca agrees, and that he then ceases the meeting, and the meeting is over. Well, the judge found that didn't happen. Either he's got a bad memory, or as the judge said, this is his fantasy, some sort of delusion on his part, but it just didn't happen. Well, the judge didn't just say, I don't think this is this is my fantasy, but I  know what    think there's a real possibility that this is going to happen. I don't know what the logic behind this decision will   don't know what the logic behind this decision will be. I don't know what